1
2
3
4
5
6

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

7
8

9    STELLA M. BLEW,                          CASE NO. 1:09-cv-01005-SMS

10                        Plaintiff,
                                              ORDER REMANDING MATTER TO THE
11           v.                               AGENCY FOR FURTHER PROCEEDINGS

12   MICHAEL J. ASTRUE,
     Commissioner of Social Security,
13
                         Defendant.
14   _____/

15

16

17          Plaintiff Stella M. Blew, proceeding *in forma pauperis*, by her attorneys, Law Offices of

18   Lawrence D. Rohlfing, seeks judicial review of a final decision of the Commissioner of Social

19   Security ("Commissioner") denying her application for disability insurance benefits under Title II

20   of the Social Security Act (42 U.S.C. § 301 *et seq.)* (the "Act").  The matter is currently before

21   the Court on the parties' cross-briefs, which were submitted, without oral argument, to the

22   Honorable Sandra M. Snyder, United States Magistrate Judge.[1]  After fully reviewing the record

23   and briefs in this matter, the Court determines that remand is necessary to address Plaintiff's

24   residual functional capacity following her development of heart and circulatory problems during

25   the pendency of her application for benefits.

26   ///

27   ///

28
     _____
          [1]  Both parties consented to the jurisdiction of a United States Magistrate Judge (Docs. 8 and 9).

1    I.    **Administrative Record**

2         A.    **Procedural History**

3         On September 11, 2006, Plaintiff filed protectively for disability insurance benefits,

4    alleging disability beginning September 1, 2004, attributable to lymphedema following breast

5    cancer surgery.  AR 9.  Her claim was initially denied on October 13, 2006, and upon

6    reconsideration on June 5, 2007.  AR 9.  On July 24, 2007, Plaintiff filed a timely request for a

7    hearing.  AR 9.  Plaintiff appeared and testified at a hearing on September 30, 2008.  AR 18-35.

8    On December 1, 2008, Administrative Law Judge Michael J. Haubner denied Plaintiff's

9    application.  AR 9-15.  The Appeals Council denied review on February 6, 2009.  AR 1-4.  On

10   June 9, 2009, Plaintiff filed a complaint seeking this Court's review (Doc. 1).

11        B.    **Factual Background**

12        Plaintiff (born November 11, 1955) is a trained medical receptionist. AR 23-24, 116.  A

13   widow, Plaintiff lives with her sister and brother-in-law.  AR 24, 96.  She has never driven and

14   gets around by public bus or rides from family members.  AR 24-25.

15        For approximately eighteen years, Plaintiff worked full time as a receptionist in a

16   podiatrist's office, performing office and computer work and assisting with surgery and

17   treatments.  AR 105, 111.  Beginning in 2001, she had a second job as a cook at Wendy's.  AR

18   110, 143.  She left both jobs on September 1, 2004, when she was diagnosed with breast cancer

19   and required surgery.  AR 110.  *See* Plaintiff's mastectomy surgery and hospitalization records at

20   AR 154-167; 193-202.

21        On or about September 7, 2004, Plaintiff developed lymphedema in her right hand.  AR

22   110, 168.  Lymphedema is "chronic unilateral or bilateral edema of the extremities due to

23   accumulation of interstitial fluid as a result of stasis of lymph, which is secondary to obstruction

24   of lymph vessels or disorders of lymph nodes."  *Dorland's Illustrated Medical Dictionary* at 968

25   (28th ed. 1994).  In Plaintiff's case, the lymph nodes in her right armpit were removed in the

26   course of the mastectomy.  AR 110.  Since October 2004, Plaintiff has worn a glove and a

27   compression sleeve to minimize swelling of her right arm.  AR 110, 124.  Plaintiff's medications

28   included furosemide (a diuretic), hydralazine (an antihypertensive), lisinopril (an ACE inhibitor),

micardis (a diuretic), nifedipine (a calcium channel blocker), and toprol (a beta-blocker) for high blood pressure; Nexium® (a proton pump inhibitor) for her stomach; and Tylenol with codeine (a narcotic pain reliever) for pain.  AR 115.

From January 13 through February 18, 2005, Plaintiff was treated at the Lymphedema Clinic of Community Outpatient Rehabilitation Center.  AR 147-153.  Treatment included ruling out venous disorders (AR 153) and training Plaintiff to manage her condition with compression and bandaging, massage, exercise, and proper skin care.  AR 147-152.  Plaintiff's treatment was complicated because a rash caused by her chemotherapy was irritated by the necessary compression bandaging.  AR 147.  Plaintiff was experiencing pain that may have been caused or aggravated by her chemotherapy, which was then ongoing.  AR 147.

Records of Plaintiff's treatment at Chinatown Family Medicine and Midwifery Medical Office, her primary source of medical care, are included at AR 172-192 and AR 327-346.  The May 4, 2006 report notes Plaintiff had limited use of her right hand because her hand and arm swelled "all the time."  AR 184.  The August 21, 2006 record also noted arm and forearm edema.  AR 177.  *See also* AR 190, 191.

On November 1, 2006, when Plaintiff completed her adult function report, she lived with her adult daughter.  AR 118.  Pain and swelling impaired her use of her right arm.  AR 123.  Nonetheless, Plaintiff cared for her cats and helped with laundry and dusting as needed.  AR 119.  She sometimes experienced difficulty buttoning her clothes and tying her shoes.  AR 119.  When the pain was severe, Plaintiff required assistance combing the back of her hair.  AR 119.  Because of difficulty gripping pots and pans, and sensitivity to heat following her surgery, Plaintiff no longer cooked.  AR 120.  Plaintiff sat outside and walked to the "little store" sometimes.  AR 121.  She could walk about four blocks without needing to rest for five or ten minutes.  AR 123.

Plaintiff liked to read and watch television, reporting that she did them both well.  AR 122.  She also read and watched television with her granddaughter daily.  AR 122.  She had no difficulty following written or spoken instructions, and could manage her own financial affairs by paying bills, counting change, handling a savings account, and using a checkbook or money orders.  AR 121, 123.

On January 24, 2007, Dr. Rustom F. Damania prepared a report evaluating Plaintiff for the California Department of Social Services. AR 210-214. He identified Plaintiff's chief complaints as lymphedema of her right hand and arm following her mastectomy and paresthesia of her fingers and feet. AR 210. Paresthesia is "an abnormal touch sensation, such as burning, prickling, or formication [sensation of crawling insects], often in the absence of an external stimulus." *Dorland's Illustrated Medical Dictionary* at 653, 1234 (28th ed. 1994). Damania noted that Plaintiff's right shoulder was "slightly tender" and that her entire right arm was "slightly swollen." AR 213. Specifically, Plaintiff's left forearm measured 8.4 inches; her right forearm, 8.6 inches. AR 213. Her left upper arm was 9.6 inches; the right was 10.7 inches. AR 213. Damania also noted restriction of the range of motion of Plaintiff's right shoulder and wrist joints as well as reduced motor strength in her right arm. AR 213. Damania provided the following functional assessment:

> The patient is a 51-year-old female. The patient should be able to lift and carry 10 pounds occasionally and 10 pounds frequently on the right side. No lifting restrictions on the left side. The patient should be able to stand and walk without restriction. The patient does not require an assistive device for ambulation except for a compression sleeve on the right arm at all times. No postural limitations. Manipulative limitations to frequent movements of the right arm, especially above the level of the right shoulder. No relevant visual or communicative impairments. No workplace environmental limitations.

AR 214.

In the agency's physical residual capacity assessment, medical consultant I. Ocrant opined that Plaintiff could lift twenty pounds occasionally and 10 pounds frequently; could stand and walk with normal breaks about six hours in an eight-hour workday; could sit with normal breaks about six hours in an eight-hour workday; had limited ability to push and pull with her upper extremities; should never balance, but could climb, stoop, kneel, and crouch frequently; had limited reaching and gross manipulation but unlimited fingering and feeling; and no visual, environmental, or communicative limitations. AR 215-222. Ocrant commented:

> As problem is limited to one arm, and the evidence is not sufficient to reduce the [less than sedentary] on basis of pain as [client] manages her money, is not cognitively impaired, and is on less than aggressive pain [prescription], it appear[s] [client] should at most be a light one-arm impairment requiring use of [sedentary vocational] table or PRW. [Functional report] indicates [client] is able to write as it is quite detailed and in her own hand. As I read the MSO was the 10/10 lifting was

4

only for the affected side, and the [left upper extremity] is unrestricted so this is a MDO for Light, not [sedentary].  Accordingly, appears [client] capable of [frequent] basic light handling and fingering on [right upper extremity], so Light [residual functional capacity] is appropriate.

AR 222.

Reports of Plaintiff's follow-up care at Cancer Care Associates appear at AR 223-320 and 324-326.  In a report dated March 21, 2007, Plaintiff's treating physician, Dr. Rabia Parveez of noted that Plaintiff  "continues to have pain in the right upper extremity because of lymphedema and she wears her sleeves on it." AR 223.  Tylenol #3 relieved "bad" right arm pain.  AR 223.  At her appointment, Plaintiff was experiencing chest pain and shortness of breath.  AR 223.  Because Parveez could not reach Plaintiff's primary care physician, he sent her to the emergency room.  AR 225.

In a second adult function report dated July 20, 2007, Plaintiff reported no changes in her condition.  AR 133.  She had begun taking allergy medications which caused drowsiness.  AR 134.  She was able to "care for [her] needs."  AR 135.

In an additional report dated March 12, 2008, Parveez noted that Plaintiff had uncontrolled high blood pressure and was recently diagnosed with coronary artery disease.  AR 324.  Plaintiff's lymphedema continued, requiring her to continue wearing the sleeve.  AR 324.

Plaintiff has experienced chronic hypertension since she was eighteen years old.  AR 185.  Her hypertension is noted as well-controlled or improved at some appointments and elevated, severe, or uncontrolled at others.[2]   AR 176, 177, 179, 180, 181, 182, 183, 184, 186, 187, 189, 190, 191, 328, 329, 332, 333, 338, 340, 341, 342, 343, 344, 346.  In 2008, Plaintiff experienced chest pain which was diagnosed as coronary artery disease.  AR 328.

Records of Plaintiff's treatment at University Cardiovascular Center are included in the record at AR 347-482.  Following an examination on June 3, 2008, Dr. Usman Javed and Dr. Ralph Wessel noted that Plaintiff frequently experienced chest pain both at rest and with exertion.  ///

---

[2]  Many of Plaintiff's doctor visits occurred because she felt ill for reasons other than fluctuations in blood pressure, especially during the course of her chemotherapy.

1   The doctors diagnosed chronic angina with a predominant exertional component; coronary artery

2   disease; hypertension, well-controlled; hyperlipidemia; and a history of asthma.  AR 347-348.

3        One week before the agency hearing, on September 23, 2008, Plaintiff's primary care

4   physician, Dr. Marc Lasher prepared a handwritten letter which concluded that, as a result of her

5   coronary artery disease, Plaintiff was unable to work and needed to be determined to be disabled

6   in order to regain access to necessary medications and specialists.  AR 483.  Lasher summarized

7   Plaintiff's medical condition:

> Stella Blew is a 52 year old patient under my medical care.  I have been her
> primary care physician since 8/2/04.  She has severe coronary artery disease which
> caused her to be hospitalized for <u>two</u> acute myocardial infarctions (heart attacks) in
> January and April of this year.  Her hypertension is severely dangerous, reading
> today at 212/120 more than enough to be very concerned about an immediate
> cerebral vascular accident (stroke).  We have great difficulty trying to control her
> blood pressure even with the assistance of the cardiologists at University Medical
> Center making the latest adjustments to her medications.  She is on <u>eleven</u>
> medications for the two above mentioned conditions.

13   AR 483.

14        **Plaintiff's testimony.**  At the agency hearing on September 30, 2008, Plaintiff testified

15   that she can carry about ten pounds.  AR 33.  Grasping things with her right hand is difficult.  AR

16   34.  After holding something for about five minutes, she needs to rest her right hand for about

17   twenty minutes.  AR 34.   She can sit for about an hour before needing to move around.  AR 33.

18   She can stand about thirty minutes and walk one to two blocks.  AR 33.  She has difficulty paying

19   attention and can only concentrate about thirty minutes.  AR 33.  Plaintiff rests twice a day for a

20   total of about three hours.  AR 34.

21        Plaintiff is able to make her bed daily but does not change the bedding.  AR 25-26.  She

22   cooks simple meals for herself.  AR 27.  She does not do laundry or iron clothes.  AR 27, 29.  She

23   dusts about once a month but does not mop, sweep or vacuum.  AR 28.   Plaintiff does not wash

24   windows or clean the bathroom or kitchen.  AR 28-29.  She does not take out trash.  AR 28-29.

25        Plaintiff is able to feed and dress herself and to perform her own personal care.  AR 26-27.

26   She has no hobbies and passes her time watching television or sitting outside.  AR 29.  She talks

27   on the telephone daily and visits with other people once each week.  AR 30.  She does not belong

28   to clubs or organizations, or attend a place of worship.  AR 30.

1    **Vocational expert's testimony.**  Vocational expert Cheryl Chandler testified that

2    Plaintiff's prior work as a receptionist was classified as SVP4 (semi-skilled) and as light work.[3]

3    AR 36.  Her experience qualified Plaintiff for receptionist positions in other settings as well as

4    basic office work.  AR 37.  In the first hypothetical, Chandler considered a person of Plaintiff's

5    age, education, language and experience who could perform work lifting and carrying twenty

6    pounds occasionally and ten pounds frequently; could stand and walk for six hours out of eight;

7    could sit for six hours out of eight; has limited ability to push and pull with the upper extremities

8    to occasional activities above shoulder level and frequent activities below shoulder level; can

9    frequently climb ramps and stairs; can never climb ladders, ropes or scaffolds; and can frequently

10   stoop, kneel, and crouch.  AR 37-38.  Accordingly, such a person could perform Plaintiff's prior

11   work.  AR 37-40.  Numerous jobs of this type, such as receptionist, information clerk, and general

12   office clerk, are available in the California and national economy.  AR 41.

13   Hypothetical two assumed a person able to lift and carry ten pounds occasionally and ten

14   pounds frequently on the right side; no lifting restrictions on the left; able to stand and walk

15   without restriction; able to sit without restriction; no postural limitations; manipulative limitations

16   to frequent movements of the right arm, particularly above the level of the right shoulder; no

17   relevant visual or communicative impairments; no workplace environmental impairments.

18   According to Chandler, such a person could not perform Plaintiff's previous work but could

19   perform unskilled sedentary work.  AR 42-43.

20   In hypothetical three, Chandler considered abilities based on Plaintiff's testimony, that is,

21   a person who could lift and carry ten pounds; sit for one hour at a time; stand for one hour at a

22   time; lie down for three hours out of eight; grip or grasp things with her dominant hand for five

23   minutes at a time, then rest that hand for twenty minutes at a time before being able to grasp

24   again.  AR 43.  In Chandler's opinion, such a person could not perform Plaintiff's prior work or

25   any other type of work.  AR 44.

26   ///

27

28   [3] Although receptionist is generally classified as a sedentary job, additional standing and walking required
     by Plaintiff's former position raised the exertion level to light.  AR 36.

1  **II.      Discussion**

2         **A.      Legal Standards**

3         To qualify for benefits, a claimant must establish that he or she is unable to engage in

4  substantial gainful activity because of a medically determinable physical or mental impairment

5  which has lasted or can be expected to last for a continuous period of not less than twelve months.

6  42 U.S.C. § 1382c (a)(3)(A).  A claimant must demonstrate a physical or mental impairment of

7  such severity that he or she is not only unable to do his or her previous work, but cannot,

8  considering age, education, and work experience, engage in any other substantial gainful work

9  existing in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).

10        To encourage uniformity in decision making, the Commissioner has promulgated

11 regulations prescribing a five-step sequential process for evaluating an alleged disability.  20

12 C.F.R. §§ 404.1520 (a)-(f); 416.920 (a)-(f).  The process requires consideration of the following

13 questions:

14        Step one:       Is the claimant engaging in substantial gainful activity?  If so, the
                          claimant is found not disabled.  If not, proceed to step two.
15
         Step two:       Does the claimant have a "severe" impairment?  If so, proceed to
16                        step three.  If not, then a finding of not disabled is appropriate.

17        Step three:     Does the claimant's impairment or combination of impairments
                          meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P,
18                        App. 1?  If so, the claimant is automatically determined disabled.  If
                          not, proceed to step four.
19
         Step four:      Is the claimant capable of performing his past work?  If so, the
20                        claimant is not disabled.  If not, proceed to step five.

21        Step five:      Does the claimant have the residual functional capacity to perform
                          any other work?  Is do, the claimant is not disabled.  If not, the
22                        claimant is disabled.

23        *Lester v. Chater*, 81 F.3d 821, 828 n. 5 (9th Cir. 1995).

24        The ALJ found that Plaintiff had not engaged in substantial gainful activity since

25 September 1, 2004.  AR 11.  Plaintiff had multiple severe impairments: right breast cancer with

26 modified radical mastectomy, history of right lymphedema, coronary artery disease, post non-ST

27 elevation myocardial infarction, and a history of angina and well-controlled hypertension.  AR 11.

28 Her impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part

1   404, Subpt. P. Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526).  AR 11.  The

2   ALJ found that Plaintiff had the residual functional capacity to lift and carry twenty pounds

3   occasionally and ten pounds frequently; to stand, walk, and sit for six hours in an eight-hour day;

4   to push and pull with her upper extremities occasionally on the right above shoulder level and

5   frequently on the right below shoulder level; and to occasionally climb ramps and stairs but never

6   ladders, ropes, or scaffolds.  AR 12.  Accordingly, Plaintiff was capable of performing her prior

7   work as a medical receptionist.  AR 14.

8       **B.    Scope of Review**

9       Congress has provided a limited scope of judicial review of the Commissioner's decision

10   to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations,

11   a court must determine whether substantial evidence supports the Commissioner's decision.  42

12   U.S.C. § 405(g).  Substantial evidence means "more than a mere scintilla" (*Richardson v. Perales*,

13   402 U.S. 389, 402 (1971)), but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d

14   1112, 1119 n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept

15   as adequate to support a conclusion."  *Richardson*, 402 U.S. at 401.  The record as a whole must

16   be considered, weighing both the evidence that supports and the evidence that detracts from the

17   Commissioner's decision.  *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).  In weighing the

18   evidence and making findings, the Commissioner must apply the proper legal standards.  *See, e.g.,*

19   *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).  This Court must uphold the ALJ's

20   determination that the claimant is not disabled if the ALJ applied the proper legal standards, and if

21   the ALJ's findings are supported by substantial evidence.  *See Sanchez v. Secretary of Health and*

22   *Human Services*, 812 F.2d 509, 510 (9th Cir. 1987).

23      **C.    Plaintiff's Claims**

24      Plaintiff contends that (1) the ALJ failed to articulate clear and convincing reasons for

25   rejecting Plaintiff's testimony and that (2) the ALJ failed to articulate specific and legitimate

26   reasons for rejecting the opinions of the treating physician.  Plaintiff further contends that the ALJ

27   erred in determining Plaintiff's residual functional capacity since (1) Dr. Ocrant's report was

28   completed before Plaintiff's heart attacks and resulting surgeries; (2) the ALJ erred in concluding

that Plaintiff's hypertension was well controlled; and (3) the ALJ misinterpreted Damania's report to conclude that Plaintiff's lymphedema was in remission.

### 1.      Failure to Adopt Dr. Lasher's Opinion

Plaintiff contends that the ALJ erred in failing to provide specific and legitimate reasons for rejecting the opinion of Plaintiff's primary care physician Marc Lasher, O.D., who provided a conclusory opinion that Plaintiff was disabled.

"The medical opinion of a treating physician is entitled to special weight." *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989); *Burkhart*, 856 F.2d at 1339; *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988). This is because a treating physician has "a greater opportunity to know and observe the patient as an individual." *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996). *See also Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987). The Social Security Administration favors the opinion of a treating physician over that of nontreating physicians. 20 C.F.R. § 404.1527; *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). Because a claimant's ability to persist in the face of pain and physical limitations is highly individualized, a treating physician, especially one with a long-term relationship with the claimant, is more likely to be able to evaluate the claimant's residual functional capacity and provide a meaningful opinion. "If a treating physician's opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record, [it will be given] controlling weight.'" *Orn*, 495 F.3d at 631, *quoting* 20 C.F.R. § 404.1527.

The ALJ gave Lasher's opinion little weight, finding that it "invade[d] an opinion reserved to the Social Security Administration (SSR 96-5p). An ALJ is "not bound by an expert medical opinion on the ultimate question of disability." *Tomasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008); Social Security Ruling 96-5p. Although a treating physician's opinion is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability." *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). The issue of whether a claimant is disabled within the meaning of the Social Security Act is an issue reserved for the Commissioner, and therefore the opinion of a treating physician that a claimant is disabled will not be given special significance.

1   20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1).  Nonetheless, such opinions "must not be

2   disregarded."  Social Security Regulations 95-5p at 5.

3         In general, a treating doctor's opinion is entitled to deference.  *See Orn*, 495 F.3d at 631.

4   This rule does not apply to a treating doctor's opinion regarding the ultimate issue of disability.

5   *Batson*, 359 F.3d at 1195 (9th Cir. 2004).  An ALJ is entitled to reject a treating physician's

6   conclusion that a plaintiff's condition rendered him disabled and unemployable since that is not

7   the doctor's role.  *Id.* at 1195 (noting that a treating physician's opinion is "not binding on an ALJ

8   with respect to the . . . ultimate determination of disability"); 20 C.F.R. § 404.1527(e)(3); SSR 96-

9   5p (stating that an opinion that a claimant is disabled, "even when offered by a treating source,

10  can never be entitled to controlling weight or given special significance").

11        The ALJ specifically and correctly cited Social Security regulations embodied in 20 C.F.R.

12  §§ 404.1527 and 416.927, in addition to SSR 96-5p, all of which unambiguously instruct that the

13  determination of a claimant's residual functional capacity or the application of vocational factors

14  is the final responsibility of the Commissioner.  The Court rejects the Plaintiff's apparent

15  approach, which is that when an ALJ disagrees with the ultimate opinion on disability expressed

16  by a physician, even a treating physician, that constitutes a disregard of the opinion of the treating

17  physician.  Rather, the ALJ must, in all cases, identify the medical evidence upon which he relies

18  in making a functional assessment.  The opinion of a treating physician is not necessarily

19  determinative on the disability issue.  *See. e.g., Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir.

20  1995), *citing Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

21        Lasher seems to have accepted the claimant's subjective complaints, and his opinion

22  appears reflective of a position of "advocate" for Plaintiff.  The opinion is conclusory in that it

23  includes not discussion of what Plaintiff can or cannot do, and appears to be based solely on a

24  high blood pressure reading at the contemporaneous examination.   As such the doctor's opinion

25  of total disability is not supported by the overall record and may not be given significant weight in

26  the decisionmaking process in accordance with SSR 96-5p.  The ALJ acted correctly in rejecting

27  it.

28  ///

## 2.     <u>Failure to Properly Evaluate Plaintiff's Testimony</u>

Plaintiff challenges the ALJ's assessment of her credibility in the context of the ALJ's determination of residual functional capacity in accordance with 20 C.F.R. §404.1529, which sets forth the agency's evaluation of a claimant's symptoms.  The ALJ appropriately summarized the regulation's requirement that he first determine the existence of a medically determinable physical or mental impairment that could reasonably be expected to produce the claimant's symptoms.  20 C.F.R. §404.1529 (b); SSR 96-4p.  "No symptom or combination of symptoms can be the basis of a finding of disability, no matter how genuine the individual's complaints may appear to be, unless there are medical signs and laboratory findings demonstrating the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the symptoms."  SSR 96-7p.

If an ALJ determines that the underlying impairment could reasonably produce the claimant's symptoms, the ALJ must then evaluate the symptom's intensity, persistence and limiting effects to determine their effects on the claimant's ability to do the basic activities of his or her work, taking into account both objective medical evidence and all other evidence including the claimant's subjective report of symptoms.  20 C.F.R. §404.1529 (c); SSR 96-7p.

An ALJ is not "required to believe every allegation of disabling pain" or other non-exertional requirement.  *Orn*, 495 F.3d at 635, *quoting Fair*, 885 F.2d at 603.  But if he or she decides to reject a claimant's testimony after a medical impairment has been established, the ALJ must make specific findings assessing the credibility of the claimant's subjective complaints. *Ceguerra v. Secretary of Health and Human Services*, 933 F.2d 735, 738 (9th Cir. 1991).  "[T]he ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."  *Lester*, 81 F.3d at 834, *quoting Varney v. Secretary of Health and Human Services*, 846 F.2d 581, 584 (9th Cir. 1988).  He or she must set forth specific reasons for rejecting the claim, explaining why the testimony is unpersuasive.  *Orn*, 495 F.3d at 635.  *See also Robbins v. Social Security Administration*, 466 F.3d 880, 885 (9th Cir. 2006).  The credibility findings must be "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."  *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002).

12

When weighing a claimant's credibility, the ALJ may consider the claimant's reputation for truthfulness, inconsistencies in claimant's testimony or between her testimony and conduct, claimant's daily activities, claimant's work record, and testimony from physicians and third parties about the nature, severity and effect of claimant's claimed symptoms. *Light v. Social Security Administration*, 119 F.3d 789, 792 (9th Cir. 1997). The ALJ may consider "(1) ordinary techniques of credibility evaluation, such as claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Tommasetti*, 533 F.3d at 1039, *citing Smolen*, 80 F.3d at 1273. If the ALJ's finding is supported by substantial evidence, the Court may not second-guess his or her decision. *Thomas*, 278 F.3d at 959.

The Ninth Circuit has summarized the applicable standard:

> [T]o discredit a claimant's testimony when a medical impairment has been established, the ALJ must provide "'specific cogent reasons for the disbelief.'" *Morgan*, 169 F.3d [595,] 599 [9th Cir. 1999] (quoting *Lester*, 81 F.3d at 834). The ALJ must "cit[e] the reasons why the [claimant's] testimony is unpersuasive." *Id.* Where, as here, the ALJ did not find "affirmative evidence" that the claimant was a malingerer, those "reasons for rejecting the claimant's testimony must be clear and convincing." *Id.* Social Security Administration rulings specify the proper bases for rejection of a claimant's testimony . . . An ALJ's decision to reject a claimant's testimony cannot be supported by reasons that do not comport with the agency's rules. *See* 67 Fed.Reg. at 57860 ("Although Social Security Rulings do not have the same force and effect as the statute or regulations, they are binding on all components of the Social Security Administration, . . . and are to be relied upon as precedent in adjudicating cases."); *see Daniels v. Apfel*, 154 F.3d 1129, 1131 (10th Cir. 1998) (concluding the ALJ's decision at step three of the disability determination was contrary to agency rulings and therefore warranted remand). Factors that an ALJ may consider in weighing a claimant's credibility include reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and "unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." *Fair*, 885 F.2d at 603; *see also Thomas*, 278 F.3d at 958-59.

*Orn*, 495 F.3d at 635.

Here, the ALJ first recounted Plaintiff's testimony:

> She has problems gripping and grasping with the right hand. The longest she can grip a coffee cup is 5 minutes then she has to rest her hand for 20 minutes before she can grip again for 5 minutes. The claimant testified that she can lift and carry ten pounds, stand 30 minutes, walk 1 to 2 blocks, and sit 1 hour. She lies down twice during the day for a total of three hours. The claimant testified that she can

only concentrate for about 30 minutes.  The claimant testified that she is fully
compliant with treatment and with taking her medications.

AR 12.

The ALJ also considered Plaintiff's daily activities, including her own reports that she
made her bed but did not change the sheets; gets around by bus or being driven by others since she
has never had a driver's license; performs her own personal care; prepares a simple meal twice a
day; dusts furniture once a month but does no other household chores; watches television three to
four hours per day; sits outside two hours; talks on the phone once a day; visits with others outside
her home once a week, and goes out to eat once a month.[4]  The ALJ concluded that Plaintiff's
reported activities were inconsistent with her own account of her regular activities.  This Court
agrees, noting additional support for the ALJ's conclusion in the records.  For example, Plaintiff
reported that she was able to read and watch television with her granddaughter; walk about four
blocks; walk to a nearby store; shop for clothing when needed; follow written and spoken
instructions; and fully manage her own financial affairs.  Plaintiff concedes that she is able to do
light household chores.

The ALJ also evaluated Plaintiff's residual functional capacity in light of the relevant
medical evidence.  He found that Plaintiff sometimes experiences pain which can be relieved by
Tylenol #3 (Tylenol with codeine), and that she has limited mobility in her right arm.  He
concluded that the medical records simply did not support Plaintiff's testimony of the severity and
extent of her disability.  Thus, just comparing Plaintiff's claimed limitations to her own account of
her daily activities supports the conclusion that her self-assessment underestimated her abilities.

Plaintiff further argues that the ALJ erred in concluding that her lymphedema was in
remission.  The Court agrees with Plaintiff that the ALJ erred in his reading of Dr. Damania's
report by interpreting Damania' statement: "Status post right breast carcinoma with mastectomy
and lymphedema on the right side.  No recurrence.  Surgery done 9/04."  When the report is

---

[4]  The ALJ required Plaintiff to answer questions relating to her daily activities by stating what she actually
did, not what others did.  While the Court recognizes the ALJ's likely motivation for directing Plaintiff to answer as
she did, the result for an adult living in a household with two other adults, as Plaintiff did at the time of the hearing,
is a lack of clarity as to what Plaintiff is *unable to do* and what Plaintiff *could do but does not do* because another
adult in the household takes responsibility for that activity.

considered as a whole, Damania's statement of no recurrence can only be properly interpreted as referring to no recurrence of cancer. Other statements in Damania's report, including his noting that Plaintiff was wearing a compression sleeve and that her right forearm was .2 inches bigger than her left and that her right upper arm was 1.1 inches bigger than her left, clearly indicate that Plaintiff was experiencing lymphedema at the time of Damania's examination.

To the extent that the ALJ based his finding that Plaintiff lacked credibility because she missed three appointments, the ALJ also erred. For at least two of the missed appointments, the doctor's notes report that the appointment was cancelled for a legitimate reason: attending a funeral and chemotherapy-related sickness. That the remaining report does not record a reason does not support a conclusion, especially in light of the numerous appointments relating to the care of Plaintiff's cancer, that Plaintiff lacked credibility. Finally, this Court has been unable to find support in the record for the ALJ's finding that Plaintiff was not compliant in taking her medications.[5]

Despite the Court's agreement with Plaintiff that the ALJ erred in these three respects, disregarding his errors does not change the ultimate result. Whether or not Plaintiff's lymphedema was in remission is irrelevant to the final determination of disability. Although medical experts disagreed on whether Plaintiff could occasionally lift ten pounds or twenty pounds with her right arm, they agreed that her use of her right arm was impaired, that she had limited ability to use her right arm above shoulder level, and that use of her left arm was unlimited. If Plaintiff could lift twenty pounds, she could perform her former work; if Plaintiff could lift ten pounds, she could not perform her prior work but could work as a receptionist in an office that did not impose the additional duties expected by the podiatrist for whom she previously worked or in any other sedentary position. In short, Plaintiff could not qualify as disabled based solely on her lymphedema, no matter which expert opinion was adopted.

ALJ also erred in concluding that Plaintiff's blood pressure was well-controlled. At several appointments, notably an appointment with Lasher on June 3, 2008, Plaintiff's blood

---

[5] The document that the ALJ cites in support of this finding appears to be a note that Plaintiff had telephoned her physician's office to request a new prescription for her inhaler.

1  pressure was described as well- controlled.  *See* AR 347.  In contrast, at an appointment just prior

2  to the hearing, Lasher indicated that Plaintiff's blood pressure was dangerously high.  This Court's

3  review of the blood pressure readings at the many medical appointments memorialized by notes in

4  the record indicated that Plaintiff's blood pressure varied substantially from appointment to

5  appointment.  The ALJ appears to have relied on isolated reports that Plaintiff's blood pressure

6  was well-controlled to the exclusion of the evidence in the record as a whole.  Although an ALJ

7  need not discuss every piece of evidence in the record, he or she may not ignore evidence that is

8  significant or probative without explanation.  *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir.

9  1984)

10  The ALJ's minimizing Plaintiff's hypertension is just a part of his overall disregard for

11  Plaintiff's heart and circulatory system problems.  Because Plaintiff developed heart and

12  circulatory symptoms after she had applied for disability benefits, the nature and results of this

13  impairment were less evaluated than those arising from her lymphedema.  Plaintiff carried her

14  burden of proof regarding these impairments, providing all relevant medical records relating to the

15  heart and circulatory problems.  The ALJ found that Plaintiff's severe impairments included

16  coronary artery disease, status post non-ST elevation myocardial infarction, and a history of

17  angina and well-controlled hypertension (AR 11), and his decision discussed the heart and

18  circulatory ailments and related treatment (AR 12-13).

19  When the burden shifted to the agency at step four, the agency dropped the ball.  Because

20  it had completed its analysis of Plaintiff's RFC before Plaintiff developed heart and circulatory

21  problems, it did not conduct the same RFC evaluation process on those symptoms as it had to

22  Plaintiff's lymphedema.  As a result, except for Lasher's inappropriate dispositive opinion, the

23  record includes no analysis of the effects of Plaintiff's heart and circulatory ailments on her ability

24  to work. The ALJ did not address Plaintiff's residual functional capacity in light of the severe

25  impairments of her heart and circulatory system.

26  The ALJ had an independent "'duty to fully and fairly develop the record and to assure

27  that the claimant's interests are considered.'" *Tonapetyan*, 242 F.3d at 1150, *quoting Smolen,* 80

28  F.3d at 1288*, and Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983).  After the ALJ found

16

1  Plaintiff's heart and circulatory ailments to be severe impairments, the clear absence of agency
2  consideration of Plaintiff's RFC in light of these ailments should have been apparent to him,
3  triggering a duty to "conduct an appropriate inquiry."  *See Tonapetyan*, 242 F.3d at 1150; *Smolen*,
4  80 F.3d at 1288; *Armstrong v. Commissioner of Social Security Admin.*, 160 F.3d 587, 590 (9th
5  Cir. 1998).  The ALJ failed to do so.  Accordingly, this Court will remand this case for
6  development of a record on the question of Plaintiff's residual functional capacity following her
7  development of heart and circulatory illness.

8  **III.    Conclusion and Remand**

9       "The court shall have the power to enter, upon pleadings and transcript of record, a
10 judgment affirming, modifying, or reversing the decision of the Secretary, with or without
11 remanding the cause for a rehearing."  42 U.S.C. § 405(g).  In social security cases, the decision to
12 remand to the Commissioner to award benefits is within the court's discretion.  *McAllister v.*
13 *Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989).  If additional proceedings can remedy defects in the
14 original administrative proceedings, a social security case should be remanded.

15      Accordingly, this Court orders that the administrative determination be REMANDED for
16 further proceedings relating to the consequences of Plaintiff's heart and circulatory condition on
17 her residual functional capacity and, in the event that additional evidence establishes that the heart
18 and circulatory problems, alone or in combination with Plaintiff's lymphedema, have resulted in
19 her disability, for determination of a date of onset.  The Clerk of Court is hereby directed to
20 ENTER JUDGMENT in favor of Plaintiff Stella M. Blew and against Defendant Michael J.
21 Astrue, Commissioner of Social Security.

22

23 IT IS SO ORDERED.

24

25 Dated:   November 29, 2010                          /s/ Sandra M. Snyder

26                                        UNITED STATES MAGISTRATE JUDGE

27

28